McKAY,
dissenting.
The standard which governs this appeal is the measure of deference we owe the trial court’s ruling on a Daubert motion. Of course, it is standard fare that “we *981 must afford substantial deference to the district court’s application of Daubert.” Hollander v. Sandoz Pharm. Corp., 289 F.3d 1193, 1204 (10th Cir.2002) (emphasis in original). As the Supreme Court has held, “the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.” Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
When reviewing scientific reliability in Hollander, after citing numerous factors to be considered, we held that “[t]he list is not exclusive, and district courts applying Daubert have broad discretion to consider a variety of other factors.” Hollander, 289 F.3d at 1205. We added that “the scope of our review is quite narrow” and, further, that the proper application of our Daubert review “may produce a counter-intuitive effect: different courts relying on essentially the same science may reach different results.” Id. at 1206.
While these holdings are in cases reviewing the exclusion, rather than the admission, of expert testimony, we noted in Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir.2004), that “[o]ur standard of review of a trial court’s factual findings in pursuit of its gatekeeping role does not vary when examining exclusion or admission of expert testimony.” We further stated that, although the district court “must, on the record[,] make some kind of reliability determination, we recognize the wide latitude a district court has in exercising its discretion to admit or exclude expert testimony.” Id. (internal quotation marks and citation omitted) (emphasis in original).
In the matter of fitting the expert’s tests to the facts of the case at hand, much emphasized by the majority, I note our holding in Bitler that “testing is not necessary in all instances to establish reliability under Daubert,” even if further tests would establish causation to a higher degree of certainty. Id. at 1236. While the majority makes much of the fact that the tests of Plaintiffs expert were not an exact replication of the circumstances of the accident, Bitler makes clear that it is within the discretion of the trial court to conclude that tests are sufficiently similar to reasonably infer the ultimate conclusion. Id.
While the majority’s opinion does an excellent job of cross-examining Plaintiffs expert and summing up, I cannot say I have a firm conviction that the trial court abused its broad discretion in denying Defendant’s motion and admitting the testimony. I am persuaded that the trial court was well within its broad discretion when it held:
[O]ther than accusing Good of having concocted a “worse case scenario” by virtue of his various testing choices, defendants made no effort to quantify the differences between Good’s laboratory results and real world rollover crashes. Stated differently, although defendants insist that the variables they identify matter, they do not show how much they matter, much less that they matter enough to completely undermine the reliability and relevance of Good’s opinions such that his testimony must be excluded in toto. Where the test is substantial similarity, such proof clearly is relevant. Nor is this a case in which Good’s testing methods are so patently inadequate that his conclusions are nothing more than rank speculation or subjective belief.
Essentially, the alleged deficiencies defendants identify go to the weight, not *982 the admissibility of Good’s expert opinions. Any alleged shortcomings in those opinions can be more than adequately addressed by cross-examination and competing evidence.
(R. Vol. 2 at 409-10 (footnote and citations omitted).)
I would affirm the verdict in this case.